**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

**UNITED STATES OF AMERICA**

**v.** **CASE NO. 1:19cr00016**

**INDIVIOR INC. (a/k/a Reckitt Benckiser Pharmaceuticals Inc.) and INDIVIOR PLC**

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT FOR COMPOUND GRAND JURY MISCONDUCT**[*]

Defendants Indivior Inc. and Indivior PLC ("Defendants" or "Indivior") respectfully submit this Reply memorandum in support of their motion (the "Motion") to dismiss the Indictment with prejudice, by reason of the compound grand jury misconduct in this case.

Introduction

This motion began with an Indictment "illegal on its face" for the inclusion in every Count against Indivior of false allegations that "Doctor D" was "convicted of 17 counts of health care fraud," Indictment ¶ 143, by reason of Indivior "aiding, abetting, counseling, commanding, inducing, and procuring Doctor D . . . to switch prescriptions to Suboxone Film." Indictment ¶ 128, ¶¶ 129–42. The initial search of the grand jury record disclosed in discovery exposed additional misconduct, by the prosecutors' abuse of certain grand jury witnesses generally, and especially those who invoked their Fifth Amendment rights. *See* Def. Mem. at 19–26 (Fifth Amendment); *id.* at 26–30 (general abuse).[1]

[*] The publicly filed version of this memorandum is redacted in order to protect certain grand jury material. An un-redacted memorandum has been filed under seal.

[1] "Def. Mem." refers to the Defendants' Memorandum In Support Of Motion To Dismiss The Indictment For Alleging The Conviction Of 'Doctor D' To Prove The Guilt Of Indivior" filed under seal on July 19, 2019.

Indivior's Motion assumed—naively as it has turned out—that the three pages of allegations of the Indictment concerning Doctor D must somehow be "supported" by evidence in the grand jury record—although we could not find it[2]—and that it must be explained by some sort of colloquy or instructions on the law, however erroneous, to the grand jury.[3] We raised the unthinkable only in passing in a footnote: "If the review of the grand jury record proves that there was *no* evidence (not even false evidence) and *no* instruction (even erroneous instruction) on the law to support the inclusion of Doctor D's conviction as part of every criminal charge against Indivior, the prosecutor will have substituted his own charge and committed a direct violation of the Fifth Amendment guarantee that '[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury . . . .'" Def. Mem. at 17 n. 13 (citing the Fifth Amendment and cases).

With the government's opposition to the Motion, the "unthinkable" is now admitted as fact. The government buries in a footnote the admission that "[i]n its original presentment, the *United States did not provide the grand jury with evidence regarding Doctor D's conviction*, and *some other facts regarding Doctor D*." ███ Opp. at 2 n.2 (emphasis added); *see also id.* at 4.[4] Thus the prosecutors confirm the worst implication of the defense's search of the discovery in this case: that the "Doctor D" conviction was never proven in any of the █ witness appearances before ██ grand juries in this case, much less in the ████████ grand jury that returned the

[2] *See* Def. Mem. at 17 (explaining how "Indivior's counsel have attempted unsuccessfully to locate the grand jury record concerning Doctor D and his conviction among the materials produced to date to the defense in discovery").

[3] *See* Def. Mem. at 6 ("Argument" summary), *id.* at 7–9 ("Reference to Doctor D's conviction before the grand jury was improper"); *id.* at 9–11 ("The grand jury was instructed erroneously on the law").

[4] "Gov. Opp." refers to the United States' Response In Opposition To Motion To Dismiss The Indictment filed under seal on August 20, 2019.

Indictment. *See* Def. Mem. at 17 & n.13. The admission that "some other facts regarding Doctor D" were likewise never proven in the grand jury, Gov. Opp. 2 n.2, turns out to be a profound understatement.

With this lead in hand, further examination of the grand jury record reveals that the grand jury that returned the original indictment on April 9, 2019 [REDACTED] had before it only testimony and exhibits from [REDACTED]. That evidence not only fails to support the "Doctor D" allegations, it does not remotely support *any* of the 47 pages of detailed and specific allegations of the Indictment. Bondurant Decl. ¶ 8; Wooley Decl. ¶¶ 2–5.[5] It is not just that "the United States did not provide the grand jury with evidence regarding Doctor D's conviction, and some other facts regarding Doctor D," the prosecutors did not prove to the [REDACTED] grand jury *any* of the salient factual allegations of the Indictment. Wooley Decl. ¶ 2–5. Significantly in this respect, there is no indication in the record that the indicting grand jury had before it any of the evidence that the prosecutors collected by using the compulsory power of [REDACTED] other grand juries. *Id.* ¶ 2. To pick just the most stark example: there is no record that *any* evidence of the specific mailings and interstate wires charged in the 21 counts of mail and wire fraud was ever put before the [REDACTED] grand jury that returned the Indictment. *Id.* ¶ 5.

In its effort to obscure and change the subject from this newly-admitted grand jury misconduct on the original Indictment, six days before its deadline to respond to Indivior's Motion (extended by agreement and court order at the government's request), the government sought to preempt this Motion by distracting this Court with another round of the shell game that

---

[5] "Bondurant Decl." refers to the Declaration of Thomas J. Bondurant, Jr. sworn to September 6, 2019 and submitted under seal in support of this Motion (summarizing the number of witnesses called before the [REDACTED] grand juries that the prosecutors used in this case); "Wooley Decl." refers to the Declaration of James R. Wooley sworn to September 6, 2019 and submitted under seal in support of this Motion (describing the evidence before the [REDACTED] grand jury that returned the Indictment that is the subject of this Motion).

these prosecutors have played with grand juries in this District: "Indivior's argument is demonstrably inaccurate because, out of an abundance of caution, to eliminate any supposed basis for even arguing confusion, the United States recently presented *the grand jury* with evidence regarding Doctor D's conviction," and "[a]fter receiving this evidence, *the grand jury* returned a Superseding Indictment nearly identical to the original, thereby mooting Indivior's contention . . . ." Gov. Opp. at 2 (emphasis added).

The government fails to mention that "the grand jury" that returned the purported "superseding indictment" was *not* the [REDACTED] grand jury that returned the original Indictment on April 9, 2019, but rather the [REDACTED] grand jury. Bondurant Decl. ¶ 10. On August 14, 2019, that [REDACTED] grand jury heard [REDACTED]

By this strategy, the government effectively concedes Point I of Indivior's Motion, that the original Indictment cannot stand, and must be dismissed. Def. Mem. at 7–16. But that is not the end of the inquiry. The remaining question is whether dismissal of the Indictment must be with prejudice, *id.* at 15–16; an issue that requires assessment of the grand jury record for

[6] *See* Declaration of Tamara Marinkovic Hines sworn to September 6, 2019 and submitted under seal in support of this motion (describing [REDACTED]. *Id.* at ¶ 5.

"willful misconduct." *United States v. Feurtado*, 191 F.3d 420, 423–25 (4th Cir. 1999) (Widener, J.); *United States v. Stevens*, 771 F. Supp. 2d 556, 566–68 (D. Md. 2011) (both applying *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)). The government may not preempt that inquiry by attempting a "superseding indictment" that assumes a determination in its favor, to dismiss the original Indictment, but without prejudice to seeking to re-indict the case.[7]

But the reasons for the government's approach are obvious: it is an attempt to evade the consequences of the greatest grand jury misconduct of all. The failure to present evidence to justify the original Indictment represents the prosecutors' complete usurpation of the grand jury's independent role to weigh evidence, and to assure that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury . . ." U.S. Const. amend. V.

[7] If this Court determines that the original Indictment must be dismissed with prejudice, then the superseding indictment "nearly identical to the original," Gov. Opp. at 2, is a nullity and must be dismissed. If the Court determines that the original Indictment need not be dismissed with prejudice, Indivior respectfully reserves the right to move to dismiss the superseding indictment, for which there are abundant grounds in addition to those asserted with respect to the original Indictment. *See, e.g.*, *supra* at 4 & n.6 and accompanying text (describing August 14, 2019 grand jury proceedings); *see also United States v. Leeper*, No. 06-cr-58A, 2006 WL 1455485, at *3 (W.D.N.Y. May 22, 2006) (dismissing a superseding indictment for "clear violation of the Fifth Amendment" where the superseding grand jury had the full transcripts from underlying proceedings "in their possession for consideration for only about 10 minutes before issuing the Second Superseding Indictment," among other grand jury abuses); *United States v. Samango*, 607 F.2d 877, 879, 882 (9th Cir. 1979) (affirming dismissal of indictment for bias; "the prosecutor left an accumulated 1,000 pages of transcripts and a prepared Superseding Indictment . . . and informed [the grand jury] off the record that he had a December 20th deadline").

## Point I

## THE PROSECUTORS USURPED THE INDICTMENT FUNCTION OF THE GRAND JURY IN VIOLATION OF THE FIFTH AMENDMENT

The government exploits the grand jury's compulsory process to gather evidence to suit the prosecutors' agenda, and then subverts the grand jury's independent constitutional role to decide the question of indictment.

### A. The prosecutors regard the grand juries as merely a fungible source of subpoena power

As this Court knows better than anyone, the practice in this District is to maintain two active grand juries, denominated "Panel A" and "Panel B," which sit for staggered, overlapping terms. Bondurant Decl. ¶ 4. By law those terms may be up to 18 months plus a 6 month extension. *Id.*; Fed. R. Crim. P. 6(g).

The government has represented that it has produced in discovery all of the grand jury testimony from the investigation of Indivior, a total of [REDACTED]. Bondurant Decl. ¶ 5; Wooley Decl. ¶ 2. The prosecutors summoned these witnesses before [REDACTED]

[REDACTED]

In short, the prosecutors used the grand juries interchangeably for years as a tool to gather evidence for the convenience and purposes of the government, all the while preventing any opportunity for any of [redacted] grand juries to consider independently whether that evidence supports or precludes an indictment. The April 9, 2019 Indictment that the government obtained by that practice violates the Fifth Amendment.

B. The prosecutors avoided any meaningful presentation of evidence to the [redacted] grand jury that returned the Indictment

Oddly, the government spends much of its Opposition on specious arguments to defend a grand jury abuse that it says it did not commit: the presentation to the [redacted] grand jury of evidence and instructions that "Doctor D [was] convicted of 17 counts of health care fraud."[8] The prosecutors would rather argue over Doctor D's conviction so as to obscure their admission that overwhelms their other grand jury misconduct: the failure to prove with evidence before the indicting grand jury *any* of the detailed factual allegations in the Indictment.

After each of the government's dubious arguments, the prosecutors default to extravagant claims in the alternative, to protest that each particular grand jury abuse is overcome by "the

[8] *See* government arguments that "Informing a Grand Jury of a Conviction Is Not Improper," Gov. Opp. at 6–9; "Indivior's 'Legal Instruction' Argument Fails," *id.* at 9–10; "The Mention of Doctor D's Conviction Is Not Misleading," *id.* at 10–12, and "The United States Acted Fairly and in Good Faith" in "the original Indictment's reference to Doctor D's conviction," *id.* at 12–14.

abundance of evidence laid out in the Indictment;" "the plethora of evidence presented to the grand jury;" "the United States supplied the grand jury with voluminous other evidence;" and "there was ample other evidence in the grand jury record to support the Indictment":

> "There is no basis to conclude that the questions biased the grand jury or prejudiced Indivior, especially given *the abundance of evidence laid out in the Indictment*. For all these reasons, Indivior's Motion should be denied." Gov. Opp. at 3 (emphasis added).
>
> * * *
>
> "Tellingly, Indivior has not even attempted to argue that *the Indictment* does not present a case against it, or that the other facts alleged *in the Indictment*, as well as the *plethora of evidence presented to the grand jury*, was insufficient for the grand jury to find probable cause." Gov. Opp. at 14 (emphasis added).
>
> * * *
>
> "Importantly, in *Mills*, the United States mistakenly failed to supply the grand jury with *any* evidence supporting the indictment; by contrast, *here, the United States supplied the grand jury with voluminous other evidence*." Gov. Opp. at 16 (first emphasis in the Gov. Opp.; second emphasis added).
>
> * * *
>
> "Rather, there was *ample other evidence in the grand jury record to support the Indictment* and Superseding Indictment, and no reason to believe that any purported improper inference added critical weight to the evidence . . . ." Gov. Opp. at 26 (emphasis added).

The occasional reference to the "evidence" in the *Indictment*, rather than "evidence in the *grand jury*," is either a Freudian slip or an artful choice of words. Each of these representations, as well as the misleading partial disclosure that "[i]n its original presentment, the United States did not provide the grand jury with evidence regarding Doctor D's conviction, and some other

facts regarding Doctor D," Gov. Opp. at 2 n.2; *id.* at 4, is to be measured against the grand jury record in this case. That record shows that *none* of the salient factual allegations of the Indictment—not just the allegations concerning Doctor D—were supported by evidence before the [REDACTED] grand jury that voted that Indictment.

For all the voluminous evidence compiled over at least seven years of investigation via search warrants, document subpoenas, and testimony in [REDACTED] grand juries, the complete record in support of the Indictment by the [REDACTED] grand jury is not difficult to review. It consists of a total of [REDACTED]. *See generally* Wooley Decl. ¶¶ 3A–F.

[REDACTED]

[REDACTED]

Importantly, there is no record in the grand jury testimony and exhibits produced in discovery to indicate that any of the evidence gathered by other grand juries was presented to the [REDACTED] grand jury that returned the Indictment. *Id.* ¶ 2.[9]

Comparison of the evidence before [REDACTED] with the Indictment in this case shows that none of the salient factual allegations were supported by evidence presented to the grand jury. That is true when the evidence (testimony and exhibits) is considered witness-by-witness, *id.* ¶ 3A–F, and when it is compared collectively against the complete factual allegations of the Indictment. *Id.* ¶ 4. The same is true of each of the felony charges brought as separate Counts of the Indictment. *Id.* ¶ 5. To cite just the simplest and starkest example: each of the 25 individual mail and wire fraud counts depends on a specific mailing or interstate wire, *none* of which were presented before the [REDACTED] grand jury. *Id.* The government did not even bother to have a summary witness vouch for the allegations in the Indictment, *id.,* as if that might substitute for evidence.

C. <u>The prosecutors usurped the grand jury's constitutional role to decide on an indictment</u>

The government appears to regard the grand jury as a convenient source of power to compel the production of evidence for the prosecutors' private consideration, and then subverts the grand jury's constitutional role "of standing between the accuser and the accused." *Wood v. Georgia*, 370 U.S. 375, 390 (1962). For these purposes the government treats the grand jury as if

---

[9] Indeed, in passing off the Indivior investigation back and forth among [REDACTED] grand juries, there is no witness testimony to show that any evidence gathered by a prior grand jury was introduced to any subsequent grand jury. Wooley Decl. ¶ 2.

it were a "law-free" zone, where no rules of law apply. As the prosecutors characterize Fourth Circuit law, "the prosecutor commit[s] no misconduct 'by badgering the witness with repeated questions about the subject for which the [Fifth Amendment] privilege was invoked.'"[10] Inapplicable in the grand jury are the rules as to "prior criminal convictions of third parties, or even defendants themselves," "Fifth Amendment rights against self-incrimination," "incompetent evidence," "hearsay," "even the exclusionary rule of evidence obtained through unlawful search and seizure," a defendant's "refusal to talk to law enforcement officers," "inadequate or incompetent evidence," or "incompetent or irrelevant" evidence. Gov. Opp. at 3, 6, 7, 8.

For these propositions, the government relies on decisions that trace their origins back to *Costello v. United States*, 350 U.S. 359 (1956). Even in the distortions propounded by the government, none of those cases permits the prosecutor to usurp the Fifth Amendment responsibility of the grand jury, by encouraging the grand jury to bring an indictment that is not supported by evidence. In fact *Costello* itself forbids it.

In the 1950's when mobster Frank Costello was indicted for tax evasion, neither the Supreme Court nor the Second Circuit had decided whether a grand jury indictment was valid if based solely on hearsay evidence. *United States v. Costello*, 221 F.2d 668, 679 (2d Cir. 1955), *aff'd sub nom. Costello v. United States*, 350 U.S. 359 (1956). At Costello's trial, 144 fact witnesses testified to his business transactions and expenditures, but in the grand jury, only three government agents had testified on a hearsay basis to their analysis of that evidence. 350 U.S. at 360–61.

---

[10] Gov. Opp. at 17 (discussing *United States v. Kennedy*, 372 F.3d 686, 697 (4th Cir. 2004), *cert. denied*, 543 U.S. 1123 (2005)). *But see United States v. Shuck*, 895 F.2d 962, 964–65, 966 (4th Cir. 1990) ("we do not condone the assistant United States attorney's repeated questioning of [a grand jury witness] . . . after [the witness] had claimed his Fifth Amendment privilege").

Before considering the hearsay question in his opinion for the Second Circuit, Judge Learned Hand first distinguished the fact pattern not present in *Costello*, but squarely presented here, where "no evidence had been offered that rationally established the facts," in which case an indictment must be dismissed for usurpation of the grand jury's function:

> "We should be the first to agree that, if it appeared that no evidence had been offered that rationally established the facts, the indictment ought to be quashed; because then the grand jury would have in substance abdicated."

221 F.2d at 677. When the Supreme Court affirmed the Second Circuit holding that hearsay evidence was sufficient, Justice Burton wrote separately to reserve the point that "if it is shown that the grand jury had before it no substantial or rationally persuasive evidence upon which to base its indictment, that indictment should be quashed." 350 U.S. at 364 (Burton, J., concurring). In this respect Justice Burton "[a]greed with Judge Learned Hand" and quoted Judge Hand for the proposition that "if it appeared that no evidence had been offered that rationally established the facts, the indictment ought to be quashed." Thus Justice Burton concurred in the judgment "for the reasons stated in the opinion of the Court of Appeals and subject to the limitations there expressed." *Id*. at 365.

None of the cases since diminish that fundamental constitutional principle. "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218 (1960) (footnote omitted). "[A] line must be drawn beyond which a prosecutor's control over a cooperative grand jury may not extend." *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979) (affirming supervisory power dismissal of indictment for government misconduct). "Dismissal of an indictment is . . . warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's

ability to make an informed and objective evaluation of the evidence presented to it." *Leeper*, 2006 WL 1455485, at *3 (internal quotation marks omitted) (dismissing indictment for government misconduct violating Fifth Amendment guarantee to an independent grand jury). "Whether derived from the constitution or from its supervisory authority, it is clear that [a court] has authority to dismiss an indictment where it was issued in violation of the Fifth Amendment's guarantee of an unbiased and independent grand jury." *Id.* The government misconduct by failure to produce to the grand jury *any* probative evidence in support of an indictment, is the ultimate violation of that constitutional right, and the ultimate prejudice to the defendant. *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988).[11]

It is a relief to find that indictments based on "no evidence that rationally established the facts," *United States v. Costello,* 350 U.S. at 364 (Burton, J., concurring; quoting L. Hand, J), are rare, but such was the case in *United States v. O'Shea*, 447 F. Supp. 330 (S.D. Fla 1978). The Court dismissed the *O'Shea* indictment after inspection of the grand jury minutes, finding that the indictment was "not supported by any evidence, competent or otherwise, to establish a prima facie case against the defendant." *Id*. at 332. Dismissal was in line with *Costello* and its progeny because those cases "deal with the validity of grand jury indictments based on incompetent or illegally obtained evidence" not the total absence of evidence, which would render the grand jury proceeding into "a judicial farce." *Id*.; *see also United States v. Romero*, 585 F.2d 391, 399 (9th Cir. 1978) ("a complete absence of evidence might serve to invalidate an indictment"); *United States v. Heine*, No. 3:15-CR-238-SI, 2017 WL 1345220, at *10 (D. Or. Apr. 7, 2017) (relying

[11] *Bank of Nova Scotia* stands for the proposition that a court may dismiss an indictment for government misconduct in the grand jury if there is prejudice to the defendant, even if (unlike the present case), "no constitutional error occurred during the grand jury proceedings," and there is no need to "inquire whether the grand jury's independence was infringed." 487 U.S. at 258.

on *Costello* for the proposition that courts may dismiss indictments based on the absence of any evidence presented the grand jury); *United States v. Bailes*, 10 F. Supp. 2d 607, (S.D. W. Va. 1998) (dismissing indictment valid on its face due to faulty evidence before grand jury).

*United States v. Mills*, 995 F.2d 480 (4th Cir. 1993), cited by the government, Gov. Opp. at 15–16, is not to the contrary. The facts of *Mills* are not "instructive"; instead they reflect a unique "odd predicament," *id*. at 15 (quoting *Mills*, 995 F.2d at 483), that has no application here. Unlike this case, Mills was brought to trial on an indictment "that the parties agree . . . [was] facially valid." *United States v. Mills*, 792 F. Supp. 444, 445 (M.D.N.C. 1992) (denying post-conviction motion to dismiss the indictment), *aff'd*, 995 F.2d 480 (4th Cir. 1993). After five days of trial including "testimony by several witnesses implicating Mills," *id.* at 444, 446, the defendant moved "[i]mmediately prior to resting his case . . . to dismiss the indictment because the only witness who testified before the *grand jury* concerning his involvement, a DEA agent, testified *at trial* that his identification of Mills [in the grand jury] was erroneous." *Id.* at 444 (emphasis added). That motion was deferred and renewed after the trial jury found Mills guilty. *Id.*

On these unique facts, with Mills having been found guilty beyond a reasonable doubt based on sufficient evidence at trial, the district court denied the motion to dismiss the indictment and the Fourth Circuit affirmed the conviction. The courts concluded that all of Mills's rights were fully protected between the grand jury and petit jury viewed together, and no rule "compels the conclusion that the Constitution has been violated where a right went unprotected by one institution, and yet was fully protected by another." 995 F.2d at 488–89.

That result on *Mills*'s unique facts is not a reason in a later case to allow an indictment that is *invalid* on its face, and obtained by subverting the grand jury's independent role to weigh

evidence, to proceed to trial.[12] As the Fourth Circuit has remarked in another context, the public "would be outraged if the federal courts suddenly decided, by fiat, to start conducting trials without first having a grand jury consider the government's evidence." *United States v. Floresca*, 38 F.3d 706, 714 (4th Cir. 1994) (*en banc*) (reversing conviction for constructive amendment of indictment at trial).

If this Indictment can stand, what is left of the Fifth Amendment guarantee that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury . . ."? U.S. Const. amend. V. The government misconduct in this grand jury presentation is not merely a matter of "insufficient" evidence, "inadequate or incompetent" evidence, or "incompetent or irrelevant" evidence, which the prosecutors claim this Court may not review. Gov. Opp. At 3, 6, 7, 8. This case crosses the line to a sham grand jury where "no evidence had been offered that rationally established the facts," the fact pattern reserved in *Costello*, and which this Court cannot ignore. *Costello*, 221 F.2d at 677 (Hand, J.), *aff'd*, 350 U.S. at 364–65 (Burton, J. concurring). The grand jury in this case has been reduced from "an investigative body acting independently of either prosecuting attorney or judge," *United States v. Williams*, 504 U.S. 36, 49 (1992), to "a mockery . . . render[ing] the Grand Jury Clause a nullity," *Leeper*, at *5. This indictment must be dismissed.

[12] In fact, *Mills* points in the direction of dismissal in this case. *Mills* acknowledges Justice Burton's concurrence in *Costello*, and the difference under the *Costello* line of cases where "the indictment was challenged on the *sufficiency of the evidence*, not, as here, *an entire lack of evidence*." 995 F.2d at 487–88 & n.3 (emphasis added) (distinguishing *United States v. Alexander*, 789 F.2d 1046, 1048 (4th Cir. 1986)). Although the Fourth Circuit notes that Supreme Court has yet to apply the Learned Hand/Justice Burton dictum to dismiss an indictment because there was "no evidence . . . that rationally established the facts," and the *Mills* court found it unnecessary to do so "for the reasons stated" on the unique facts of that case, *id.* at 488, the Fifth Amendment violation here requires no less.

Case 1:19-cr-00016-JPJ-PMS Document 138 Filed 09/11/19 Page 15 of 20 Pageid#: 1266

Point II

IF THE INDICTMENT IS NOT DISMISSED WITH PREJUDICE ON THE PRESENT RECORD, THE [REDACTED] GRAND JURY RECORD MUST BE REVIEWED FOR WILLFUL MISCONDUCT

The April 9, 2019 Indictment of Indivior was not a spontaneous initiative of the [REDACTED] grand jury on the [REDACTED]. And the void in the record before the [REDACTED] grand jury was not the result of accident or innocent mistake by the prosecutors. On the record available so far, that government misconduct can only be regarded as "willful," and the Indictment must be dismissed with prejudice. *Feurtado*, 191 F.3d at 423–25; *Stevens*, 771 F. Supp. 2d at 566–68 (both applying *Bank of Nova Scotia*, 487 U.S. at 256).

If the "willfulness" question remains in doubt, "[t]he court may authorize disclosure . . . of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). If there were any doubt about the sufficiency of the "defendants' showing" in favor of grand jury disclosure, now we have the government's admission—and misleading understatement—that "[i]n its original presentment, the United States did not provide the grand jury with evidence regarding Doctor D's conviction, and some other facts regarding Doctor D." Gov. Opp. at 2 n.2; *see also id.* at 4.

There needs to be disclosure of all of the evidence (testimony and exhibits) as well as the colloquy regarding the Indivior investigation between prosecutors and grand jurors when no witness was present, before the [REDACTED] grand jury, in order to identify:

(a) Whether the prosecutors somehow made up this deficit in the evidence without a witness present in the grand jury, and if so, whether they did so in a lawful manner, or

  in a manner that made them improper "unsworn witness[es]," *see Leeper*, 2006 WL 1455485, at *3;

(b) How the prosecutors presented and explained to the grand jurors an Indictment that was not remotely supported by any evidence before the grand jury;

(c) Whether grand jurors questioned prosecutors about the absence of evidence in support of the Indictment, and how the prosecutors responded;

(d) Such other evidence as may bear on the question of willful government misconduct before the grand jury, and all other issues relevant to this Motion.

Conclusion

The instant Indictment should be dismissed with prejudice for willful government misconduct before the grand jury, or in the alternative, further proceedings should be held to determine whether the dismissal must be with prejudice due to willful government misconduct, including disclosure to Indivior of all grand jury proceedings before the [REDACTED] grand jury that returned the Indictment that have not yet been produced in discovery, including all exhibits, witness testimony, and colloquy between prosecutors and the grand jury, and all proceedings that must be recorded by a court reporter or by a suitable recording device pursuant to Fed. R. Crim. P. 6(e)(1); and such other proceedings as may be just and proper. A hearing on this Motion has been set by the Court for October 4, 2019.

Dated: September 6, 2019            Respectfully submitted,

                                              INDIVIOR INC. (a/k/a Reckitt Benckiser Pharmaceuticals Inc.) and INDIVIOR PLC

                                              /s/ Peter J. Romatowski
                                              By Counsel

Thomas J. Bondurant, Jr.
**Gentry Locke**
10 Franklin Road SE
Roanoke, Virginia. 24022
(540) 983-9389
bondurant@gentrylocke.com

Jennifer S. DeGraw
**Gentry Locke**
10 Franklin Road SE
Roanoke, Virginia. 24022
(540) 983-9445
degraw@gentrylocke.com

James M. Gross (admitted *pro hac vice*)
**Jones Day**
250 Vesey Street
New York, New York 10281
(212) 326-3733
jgross@jonesday.com

James P. Loonam (admitted *pro hac vice*)
**Jones Day**
250 Vesey Street
New York, New York 10281
(212) 326-3808
jloonam@jonesday.com

Peter J. Romatowski (admitted *pro hac vice*)
**Jones Day**
51 Louisiana Avenue NW
Washington, D.C. 20001
(202) 879-7625
pjromatowski@jonesday.com

James R. Wooley (admitted *pro hac vice*)
**Jones Day**
901 Lakeside Avenue

Cleveland, Ohio 44114
(216) 586-7345
jrwooley@jonesday.com


Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be presented to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification of such filing to all counsel of record, on this 9th day of September, 2019.

/s/ Thomas J. Bondurant, Jr.
Counsel for Defendants