UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:19-cr-00016 |
| INDIVIOR INC. (a/k/a Reckitt Benckiser | ) |
| Pharmaceuticals Inc.) and | ) |
| INDIVIOR PLC | ) |

### UNITED STATES' RESPONSE IN OPPOSITION TO
### INDIVIOR'S SECOND MOTION TO DISMISS

The United States of America ("United States") opposes the "Motion to Dismiss the Superseding Indictment, to Strike Surplusage and for Inspection of Grand Jury Materials" (Doc. 249) ("Motion") and Memorandum in Support (Doc. 251) ("Memorandum") of Defendants Indivior Inc. (a/k/a Reckitt Benckiser Pharmaceuticals Inc.) and Indivior plc (collectively, "Indivior") as follows.

### INTRODUCTION

The Superseding Indictment uses the words of the Health Care, Mail, and Wire Fraud statutes in alleging that Indivior conspired to, and did, execute a scheme to defraud health care benefit programs, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money of health care benefit programs. It explains that the object of the scheme was to fraudulently convert prescriptions to Suboxone Film for monetary gain, and the means included fraudulent (a) statements to health care providers; (b) marketing materials; (c) statements to and related to government agencies; and (d) patient referrals and aid to doctors issuing clinically unwarranted Suboxone prescriptions. The last of these means also serves as evidence of Indivior's intent to defraud, because it shows that Indivior prioritized converting prescriptions to Suboxone Film over safe and effective opioid-dependence treatment.

Indivior's instant Motion and Memorandum attack the last of these means. Indivior's attacks are misguided. First, Indivior suggests that referring patients to and aiding doctors issuing clinically unwarranted Suboxone prescriptions, in order to convert the doctors to prescribing Suboxone Film and profit from their prescriptions, is not fraudulent. However, it is the jury's province to determine whether such conduct is fraudulent, and there is no reason to hold such conduct non-fraudulent as a matter of law.

Second, Indivior contends that to the extent the Superseding Indictment alleges Indivior aided and abetted doctors' independent crimes, it fails to allege the elements of the doctors' independent crimes. This is a straw man argument. The Superseding Indictment alleges that Indivior referred patients to and aided the doctors as a means of the fraud scheme alleged in the Superseding Indictment, not to aid unspecified independent crimes by the doctors.

Third, Indivior claims that the final means of the scheme so differs from the others that it must be charged as a separate offense, to avoid duplicity. On the contrary, given that the defendant (Indivior) employed all four means simultaneously (during its promotion of Suboxone Film) and to the same end (fraudulently converting prescriptions to Suboxone Film), there is no requirement that the final means be charged as a separate offense, and no duplicity problem.

Indivior waived all these attacks by impermissibly "sandbagging" the United States, strategically withholding the attacks through fulsome litigation of its first motion to dismiss, in order to overwhelm the United States with briefing in derogation of the Scheduling Order.

Finally, the Court has already rejected Indivior's baseless assertion that the prosecution "usurped" the Grand Jury's constitutional role by somehow denying it an opportunity to deliberate, and denied Indivior's request for further disclosure of grand jury information because speculation does not satisfy the requirements of Rule 6(e)(3)(E)(ii).

## FACTS

On April 9, 2019, the Grand Jury returned the Indictment (Doc. 3). Counts One and Two tracked the Health Care Fraud statute, 18 U.S.C. § 1347, in alleging that Indivior and others:

- "conspired to commit . . . Health Care Fraud, in violation of Title 18, United States Code, Section 1347, that is, knowingly and willfully executed and attempted to execute the scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations, and promises money and property owned by and under the custody and control of Medicare, Medicaid, private insurance providers, and other health care benefit programs in connection with the delivery of and payment for health care benefits, items, and services;" and

- committed Health Care Fraud, that is, "as principals and aiders and abettors, knowingly and willfully executed and attempted to execute a scheme and artifice to (1) defraud health care benefit programs as defined in Title 18, United States Code, Section 24(b), including Medicaid, Medicare, other public health care programs, private insurance providers, and other health care benefit programs, and (2) obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services."

Similarly, Counts 3-28 tracked the Mail and Wire Fraud statutes, 18 U.S.C. §§ 1341, 1343, using the words of those statutes (*see* Doc. 3 at 40-42).

The Indictment included more than 140 paragraphs of particulars, tracing the origin of the scheme and illustrating each means with fact-intensive examples (*see* Doc. 3 at 2-35).

Defense counsel began noticing their appearances on the day after the Grand Jury returned the Indictment (*see* Doc. 12).

On July 16, 2019, the Court issued the Scheduling Order (Doc. 79). It provides, in pertinent part, "the deadline by which the defendants shall file any . . . motion attacking the sufficiency of the charges or the charging Indictment against the defendants is extended to September 10, 2019."

On July 19, 2019, Indivior timely filed a "Motion to Dismiss the Indictment for Alleging the Conviction of 'Doctor D' to Prove the Guilt of Indivior" (Doc. 81) and Memorandum in Support (Doc. 82). Indivior argued that the Indictment should be dismissed with prejudice due to three supposed errors relating to a physician referenced in the Indictment as "Doctor D," and the grand jury record should be reviewed for misconduct because, among other reasons, the prosecution supposedly "usurped" the Grand Jury's constitutional role.

On August 14, 2019 – roughly four weeks before the Scheduling Order's September 10 deadline for Indivior to file "any . . . motion attacking the sufficiency of the charges" – the Grand Jury returned the Superseding Indictment (Doc. 115). It is nearly identical to the original Indictment (Doc. 3). Revisions were made to one of the approximately 50 paragraphs of particulars in Section D, which describes how Indivior referred patients to and aided doctors who its own medical personnel had found were engaged in "very careless and clinically unwarranted prescribing behaviors," as a means of its fraudulent scheme. Specifically, in Paragraph 143 of that section, "3/31/2017" and "Doctor D convicted of 17 counts of health care fraud" were replaced with "11/5/2015 through 3/31/2017" and "Doctor D indicted on 11/5/2015 for health

care fraud related to urine testing; found guilty of 17 counts on 3/31/2017." The only other changes were to the Notice of Forfeiture at the end of the document.

Between July 19 and September 20, 2019, the parties filed roughly 75 pages of briefing regarding Indivior's motion to dismiss (*see* Docs. 82, 127, 138, 157). In a hearing on October 4, 2019, the Court received approximately 80 minutes of argument on the motion (Doc. 190). In the same hearing, the Court instructed the parties to "advise the court if any adjustments need to be made to the deadlines" in the Scheduling Order. *Id.*

The Court denied Indivior's motion to dismiss in a 21-page Opinion and Order dated November 14, 2019 (Doc. 228).

More than a month later, on December 19, 2019, without seeking any adjustments to the deadlines in the Scheduling Order, Indivior filed the instant Motion (Doc. 249) and Memorandum (Doc. 251). They attack the sufficiency of the charges by arguing that all allegations that Indivior referred patients to and aided doctors it had found were engaged in "very careless and clinically unwarranted prescribing behaviors" should be dismissed or stricken. They also repeat the argument that the grand jury record should be reviewed for misconduct, because the prosecution supposedly "usurped" the Grand Jury's constitutional role, even though the Court previously adjudicated that request (Doc. 228).

Pursuant to the Scheduling Order (Doc. 79), the United States made its Rule 16(a)(1)(G) expert disclosure four days ago, on January 10, 2020. The United States faces deadlines to respond to two other briefs Indivior has filed two days from today, on January 16, 2020. The Scheduling Order does not contemplate litigation of successive motions to dismiss. The United States' trial witness and exhibits lists are due on February 11, 2020.

## LAW AND ARGUMENT

As a preliminary matter, an indictment is sufficient if it contains the elements and fairly informs the defendant of the charge(s), and enables her to assert double jeopardy. This may be accomplished by using the words of the statute. *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Here, each Count of the Superseding Indictment uses the words of the pertinent statute, and paragraphs 2-148 trace the origin of the alleged scheme and illustrate each means with fact-intensive examples.

**A.     It Is the Jury's Province to Decide Whether the Referrals and Aid Were Fraudulent**

The first point of Indivior's Memorandum implies that Indivior's patient referrals and aid to doctors it had determined were engaged in "very careless and clinically unwarranted prescribing behaviors" were not fraudulent: Indivior argues that these allegations should be stricken, and all counts associated with them dismissed. *See* Memorandum at 8-12.

Indivior's suggestion that its referrals and aid were not fraudulent must be rejected, because "[t]here is no such thing as a motion for summary judgment in a criminal case." *Russell v. United States*, 369 U.S. 749, 791 (1962) (Harlan, J., dissenting). The Superseding Indictment alleges that the patient referrals and aid were a fraudulent means of Indivior's fraudulent scheme, and involved fraudulent pretenses, representations, and promises. The Court should not dismiss or strike allegations or counts before trial, on the ground that an allegedly fraudulent means of a fraudulent scheme was not fraudulent.

To give a recent example of the many cases applying this general principle, in *United States v. Swain*, No. 3:18-cr-181, 2019 WL 1763249, at *2 (W.D.N.C. April 22, 2019), the defendant sought dismissal of a count, arguing that videos he created did "not constitute child pornography as a matter of law." The court rejected this argument, reasoning, in pertinent part:

> Because such challenges cannot be raised before trial, the motion is denied. . . . Rule 12(b) of the Federal Rules of Criminal Procedure limits pretrial challenges to indictments to those that "the court can determine without a trial on the merits." Indeed, the Supreme Court has established that "a defense [under Rule 12] is . . . 'capable of determination'" only "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." Accordingly, it is the jury's province to determine whether the videos underlying a child pornography indictment depict a child engaged in "sexually explicit conduct," within the meaning of federal law. Defendant's attempt to remove from the jury the determination of whether his videos depict sexually explicit conduct—and with it, the ultimate question of his innocence or guilt—fails.

*Id.* (internal citations omitted).

Likewise, here, any attempt to remove from the jury the determination of whether Indivior's patient referrals and aid to certain doctors were fraudulent should fail. At trial, the United States will show that Indivior referred patients to and aided doctors it had determined were engaged in "very careless and clinically unwarranted prescribing behaviors," as a means of its scheme to fraudulently convert prescriptions to Suboxone Film for monetary gain. This fact issue cannot be resolved by the Court before trial. *See also, e.g., United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998) ("the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment"); *United States v. Suarez*, No. 2:14-cr-119, 2015 WL 13049998, at *3 (E.D. Va. March 17, 2015) ("Simply put, it is ultimately the jury's duty to determine whether the Defendant had the requisite intent to commit the alleged crimes, based on all of the evidence admitted at trial"); *United States v. Shabbir*, 64 F.Supp.2d 479, 481 (D. Md. 1999) (court should not grant motion to dismiss where defendant's "legal contentions are inextricably bound up with the facts of the case").

Additionally, Indivior's patient referrals and aid to doctors it had determined were engaged in clinically unwarranted prescribing are evidence of Indivior's intent to defraud. They show that Indivior prioritized converting prescriptions to Suboxone Film over safe and effective opioid-dependence treatment. Thus, even if they were not a means of Indivior's fraudulent scheme, they still would not be surplusage, *i.e.*, facts or circumstances neither relevant nor material to the charges. *See, e.g.*, *United States v. Kennedy*, No. CIV. 07-CR-131, 2007 WL 2156611, at *4 (E.D. Va. July 25, 2007) (defining surplusage).

Finally, Indivior's acts in referring patients to and aiding doctors known to be engaged in clinically unwarranted prescribing, as a means to convert the doctors to Suboxone Film and profit from their prescriptions, fall within the ambit of the Health Care Fraud statute. There is no basis in law or logic to hold such conduct non-fraudulent.

**B.      The Superseding Indictment Alleges Indivior Aided Doctors as a Means of Its Fraud**

The first point of Indivior's Memorandum ultimately contends that, "[t]o the extent the Superseding Indictment purports to attach liability to Indivior for 'aiding and abetting' physicians' careless prescriptions," it fails to contain the elements of those physicians' independent crimes. *See* Memorandum at 9. This is a straw man argument. The Superseding Indictment alleges that Indivior referred patients to and aided these doctors as a means of the alleged fraudulent scheme. Its charges and structure reflect that Indivior's referrals and aid to the doctors were a means of the "scheme and artifice to defraud" (*see* Doc. 115 at 10, 28-34, 38-39). Indivior's alternative construction of the allegation that it aided doctors, to mean that it aided doctors' independent crimes not alleged in the Superseding Indictment, in service of an argument that the Superseding Indictment is insufficient, should be rejected.

## C. The Alleged Scheme Is Not Duplicitous for Having Multiple Means

The second point of Indivior's Memorandum argues that Indivior's patient referrals and aid to doctors it had found were engaged in "very careless and clinically unwarranted prescribing behaviors" constitutes a separate offense, implicating duplicity. However, none of the cases Indivior cites (and none the United States has found) supports Indivior's position.

A count is not duplicitous if it "charges the commission of a single offense by different means." *United States v. Foggo*, No. 1:08-cr-79, 2008 WL 2777009, at *5 (E.D. Va. July 14, 2008). Thus, "two or more acts, each of which would constitute an offense standing alone . . . may instead be charged in a single count if those acts could be characterized as part of a single, continuing scheme." *United States v. Burfoot*, 899 F.3d 326, 337 (4th Cir. 2018) (quoting *United States v. Kamalu*, 298 F. App'x 251, 254 (4th Cir. 2008) (unpublished) (quoting *United States v. Shorter*, 809 F.2d 54, 56 (D.C. Cir. 1987))).

Though the Fourth Circuit does not appear to have adopted particular factors to evaluate whether a count is duplicitous, other circuits have looked to (1) the nature of the scheme; (2) the identity of the participants; (3) the quality, frequency, and duration of transactions; and (4) the commonality of time and goals. *See, e.g., Foggo*, 2008 WL 2777009, at *5 (citing and discussing *United States v. Mastelotto*, 717 F.2d 1238, 1244 (9th Cir.1983), *United States v. Zemek*, 634 F.2d 1159, 1168 (9th Cir. 1980), and others). They have noted that "the defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme." *Mastelotto*, 717 F.2d at 1244 (quoting *Owens v. United States*, 221 F.2d 351, 354 (5th Cir.1955)).

Based on a review of the case law, there is no question that Indivior's alleged scheme is properly charged as a single, continuing offense. It need not be divided into separate offenses.

Several of the cases Indivior cites actually rejected duplicity arguments, and thus support the United States' position. *See, e.g., United States v. Robinson*, 855 F.3d 265, 270 (4th Cir. 2017) (finding no duplicity in carjacking case where the defendant's "focus on the evidence required to prove an offense elide[d] the distinction between different means of committing one offense and different offenses"); *United States v. Urbanik*, 801 F.2d 692, 695-96 (4th Cir. 1986) (finding no duplicity because while the "principals may have performed their roles at different points in the [cocaine] distribution network . . . the evidence suffices to support the inference of a single large conspiracy").

The difference between a duplicitous count, and one that is not duplicitous, is illustrated by comparing two cases discussed in Indivior's Memorandum: *United States v. Witasick*, No. 4:07-cr-00030, 2008 WL 1924023 (W.D. Va. April 28, 2008), and *Burfoot*, 899 F.3d 326.

In *Witasick*, the district court held that a conspiracy count was duplicitous, because the count involved allegations that the defendant "defrauded two separate insurance companies [and] committed several tax offenses," and the insurance and tax offenses had different participants and were "not related, nor temporally similar." *Witasick*, 2008 WL 1924023, at *1-2.

By contrast, in *Burfoot*, the defendant, a politician, argued that an extortion count was duplicitous because it charged him "with obtaining multiple things of value in return for various official acts." The Fourth Circuit rejected this argument because the indictment described an "ongoing extortion scheme" in which others "made cash payments in exchange for [the defendant's] votes." *Burfoot*, 899 F.3d at 337.

In another useful illustration, the district court in *Foggo*, 2008 WL 2777009, at *5-8, reviewed several cases evaluating duplicity arguments, before rejecting the defendant's contention that fraud counts regarding seeking contracts for one associate, and seeking

employment for another, were duplicitous.  The court noted that the defendant was "the epicenter of the purportedly separate schemes," his conduct was at "the heart of all of these allegations," and the purportedly separate schemes had a common, overarching goal.  *Id.* at \*7-8.

The instant case is analogous to *Burfoot* and *Foggo*, not *Witasick*.  Here, Indivior formulated the alleged scheme, and carried it out, and the transactions all involved communications regarding Suboxone, and were made during the promotion of Suboxone Film.

Finally, Indivior's suggestion that duplicity requires wholesale dismissal of counts is contrary to law.  Even *Witasick*, which found duplicity, and on which Indivior's Memorandum relies, emphasized this point.  *See* 2008 WL 1924023, at \*2 (permitting the prosecution "to decide which single conspiracy theory they intend to pursue, tax fraud or insurance fraud").

### D. Indivior Waived Its Arguments by "Holding Onto" Them (or, "Sandbagging")

As the United States previously explained in its Motion to Quash Indivior's Second Motion to Dismiss (Doc. 256), Indivior waived its instant attacks on the charges by strategically "holding onto" them through briefing and argument of its first motion to dismiss.  The Fourth Circuit has condemned this strategy.  *United States v. Mathis*, 932 F.3d 242, 256-57 (4th Cir. 2019) (a "district court 'may consider' an untimely motion only if the moving party 'shows good cause' for its delayed action," and a decision to "hold onto" an argument is not good cause).

The United States respectfully incorporates its prior Motion to Quash by reference, rather than rehash it here.  In sum, rather than follow proper procedure, and advise the Court if any adjustments needed to be made to the deadlines in Scheduling Order (*see* Doc. 190), Indivior bypassed the Scheduling Order.  Indivior likely recognized that an amendment might limit any second motion to dismiss to attacks unavailable to Indivior on a timely basis.  Tellingly, none of

Indivior's instant attacks was unavailable to it on a timely basis, as none even relates to the Superseding Indictment's minor revisions to paragraph 143 and the Notice of Forfeiture.

Accordingly, Indivior's instant Motion and Memorandum take a prototypical "second bite at the apple." Moreover, Indivior is seeking to outflank the United States by filing copious briefing, rendering the United States' Rule 16(a)(1)(G) expert disclosure, response to Indivior's motion to suppress, response to Indivior's objections regarding Rule 17(c) subpoenas, and this brief all due within a one-week period.[1] The tactic of withholding arguments and deploying them late defeats a core purpose of the Scheduling Order: to promote efficient, fair litigation.

**E.     Once Again, There Is No Basis to Review the Grand Jury Record for Misconduct**

As the Court correctly held in its Opinion and Order Denying Motion to Dismiss (Doc. 228), Indivior's conclusory allegations of government misconduct are insufficient and legally incorrect. Indivior's theory that the prosecution "usurped" the Grand Jury's constitutional role by denying it an opportunity to deliberate makes even less sense now than on its first motion to dismiss, given that the Superseding Indictment differs from the original Indictment by only a few words in paragraph 143 and the Notice of Forfeiture. Indivior's argument again relies on rank speculation that "the government asked the grand jury to return [the Superseding Indictment] in less than a day" and denied the Grand Jury "the opportunity to" review electronic evidence, and an inappropriate suggestion that the Grand Jury was not "independent." As the Court correctly held the first time Indivior aired these points, a defendant seeking production of grand jury materials must do more than make unsubstantiated or speculative allegations of impropriety to prevail under Rule 6(e)(3)(E)(ii).

---

[1] The United States obtained a one-week extension of time to file its response to motion to suppress, but either way it was due within a week of this brief.

## CONCLUSION

For all of these reasons, Indivior's Motion (Doc. 249) should be denied in its entirety.

Respectfully submitted,

DANIEL P. BUBAR
First Assistant United States Attorney
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

/s/ Albert P. Mayer, VSB No. 86024
Randy Ramseyer
Kristin L. Gray
Joseph S. Hall
Garth W. Huston
Janine M. Myatt
Carol L. Wallack
United States Attorney's Office
180 West Main Street
Abingdon, VA 24210
Tel:   (276) 628-4161
Fax:   (276) 628-7399
Email: albert.p.mayer@usdoj.gov


DAVID MORRELL
Deputy Assistant Attorney General

Matthew J. Lash
Charles J. Biro
United States Department of Justice
Civil Division, Consumer Protection Branch
950 Pennsylvania Avenue, N.W.
Washington, DC  20530
Tel:   202-307-0089
Email: charles.biro@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on January 14, 2020, I filed the foregoing Response in Opposition to Indivior's Second Motion to Dismiss with the Clerk of Court via the CM/ECF system, which will send notification of the filing to all counsel of record in this matter.

/s/ Albert P. Mayer, VSB No. 86024