UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   Case No. 1:19-cr-00016 |
| INDIVIOR INC. (a/k/a Reckitt Benckiser | ) |
|    Pharmaceuticals Inc.) and | ) |
| INDIVIOR PLC | ) |

**UNITED STATES' RESPONSE TO COURT ORDER
REGARDING THE SEARCH WARRANT AFFIDAVIT**

The United States of America ("United States") respectfully asks the Court to consider this supplemental filing in response to Court Order (Doc. 302). The Court has asked the government to address defendants' argument that the search warrant affidavit ("SW Affidavit") should have included the fact that the cooperating witness had filed a *qui tam* complaint against Indivior. As set out below, this fact, if included, would not have been material to the magistrate judge's determination of probable cause, and did nothing to discredit the cooperating witness, and therefore would not have changed the correct outcome – a finding of probable cause.

A. **The fact that the cooperating witness became a *qui tam* relator after supplying cooperation would not have been material to the finding of probable cause.**

The defendants' argument regarding the fact that the cooperating witness is a *qui tam* relator is without merit because it would not have been material to the finding of probable cause. In cases involving a fact not included in a search warrant affidavit, courts have held that "to establish a *Franks* violation, a defendant must prove that the affiant … intentionally or recklessly omitted material information from the affidavit." *United States v. Wharton*, 840 F.3d 163, 168 (4th Cir. 2016) (referencing *Franks v. Delaware*, 438 U.S. 154, 156 (1978)). Importantly, "*Franks* requires proof of both intentionality and materiality." *Id*. In their brief, defendants offer no proof

that the government's non-inclusion of the fact was intentional or reckless, or that the fact would have been material to the magistrate judge's assessment of probable cause. Defendants merely state that the fact should have been included "to inform the 'totality of the circumstances' analysis" (Defs.' Mem. 7, Doc. 262), but offer no argument, case citations, or other analysis on whether, if included, the magistrate would have found probable cause lacking. And any attempt by the defendants would be futile because, as set out below, including in the SW Affidavit the fact that the cooperating witness was a *qui tam* relator would not have changed the outcome as it was not material to the probable cause determination.

The Fourth Circuit noted in *Wharton*, "an omission is material if it is 'necessary to the [neutral and disinterested magistrate's] finding of probable cause.'" *Wharton*, 840 F.3d at 168 (quoting *Franks*, 438 U.S. at 156). "Even if relevant, information is not material unless 'its inclusion in the affidavit would defeat probable cause.'" *Id.* at 168-169 (citing *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)). To assess materiality of an omission, a court will insert the omitted facts and then determine whether or not the corrected warrant affidavit would establish probable cause. *Id.* at 169 (citing *Miller v. Prince George's Cty.*, 475 F.3d 621, 628 (4th Cir. 2007)). If it does, then there is not a *Franks* violation. Importantly, defendants have the burden to show why the omitted fact is significant – that is, defendants "must demonstrate that the totality of both the facts [the] Agent [] provided in his affidavit and the facts that he omitted do not signal 'a fair probability that … evidence of [the] crime w[ould] be found'" in the places to be searched. *Id*. (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Significantly, defendants, at the outset, have failed to meet their burden – they simply offer no proof, analysis, or support for this argument. This is likely because there is no support for their position. Insertion of the fact that the cooperating witness eventually became a *qui tam* relator has

no bearing on the finding of probable cause, and the government has found no case supporting such a position. As the SW Affidavit sets out, the cooperating witness met with the Government on April 4, 2013, stated her desire to blow the whistle on improper conduct, spoke about her personal knowledge of the improper conduct, and provided 562 pages of documentation of a suspected crime, of which she also stated she had personal knowledge. (SW Affidavit, ¶¶ 8-10.) The documents she provided on April 4th corroborated her statements to the investigators of the suspected crime, and a number of these documents were attached to the SW Affidavit. Further, the cooperating witness made several surreptitious recordings on April 22-24, 2013, at an Indivior corporate conference, which were also discussed in the SW Affidavit. (SW Affidavit, ¶ 11.) At all of these times, she had not yet become a *qui tam* relator. The cooperating witness subsequently filed her *qui tam* complaint on May 3, 2013. The fact that she later filed such a case had no bearing on any of the documents and recordings she had presented.

Here, as in *Wharton*, "inclusion of the omitted information does not [undermine] the foundational core of the affidavit." *Wharton*, 840 F.3d at 169 (distinguishing *United States v. Lull*, 824 F.3d 109 (4th Cir. 2016) (omission of informant's criminal acts fundamentally undermined the informant's reliability) and *United States v. Tate*, 524 F.3d 449 (4th Cir. 2008) (police officer affiant failed to disclose that he had trespassed to search defendant's trash to obtain evidence of criminal activity)). As the Fourth Circuit so precisely stated in *Wharton*, "[f]or in this case, the corrected affidavit still includes unchallenged information establishing probable cause." *Id.* The omitted *qui tam* fact did not "fundamentally undermine[] the informant's reliability," making her "inherently unreliable." In fact, "nothing [the] Agent [] omitted casts doubts on the inherent validity (whether through unreliability, illegality, etc.) of any information in the original affidavit."

*Id.* at 170. Tellingly, no one has shown that any information in the SW Affidavit was inaccurate, thus the defendants' argument is hollow.

B.     **The fact that the cooperating witness became a *qui tam* relator did not discredit her or diminish the information she provided.**

It seems that defendants mention the *qui tam* complaint to discredit the cooperating witness or suggest that the "significant financial motive" somehow would diminish the magistrate's reliance on her information. However, the standard for disputing a cooperating witness's credibility is high, particularly a known (as opposed to anonymous) cooperating witness who has no known criminal background, meets face-to-face with the investigating officers, has shown no reason for law enforcement to doubt her veracity, and has potential loss or liability if she provides false or incorrect information. *See Illinois v. Gates*, 462 U.S. 213, 233 (1983) ("if an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny of the basis of his knowledge unnecessary")[1]; *United States v. Robinson*, No. 1:02CR00045, 2002 U.S. Dist. LEXIS 20196, *5 (W.D. Va. Oct. 23, 2002) ("The presentation of false information to law enforcement would not only have had a deleterious effect on the informant's ultimate objective, but also would have opened him up to possible criminal prosecution") (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972) ("holding that because a known informant may be subject to arrest for making a false statement, *there is inherent reliability of the information provided*.") (emphasis

---

[1] *See also, United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006) ("Nor is an affidavit's omission of an informant's motive for providing information necessarily essential to a probable cause determination, especially when the informant is sufficiently reliable that probable cause would have been found even if the motive were included."); *Edwards v. Cabera*, 58 F.3d 290, 294 (7th Cir. 1995) ("Regarding the reliability of the informant, we have noted that a citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal activity themselves.").

added)). In fact, an informant's motive generally is not required in the affidavit and often serves no purpose where a known informant supplies firsthand information of wrongdoing. *See generally, Gates*, 462 U.S. at 234 ("even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.").

The cooperating witness's filing of a *qui tam* complaint arguably bolsters her credibility, because it means she confirmed her account in a court pleading subject to Federal Rule of Civil Procedure 11. A *qui tam* relator has little incentive to lie or provide false information to law enforcement officials when the truth and validity of the information supporting her *qui tam* claims is essential to any possible eventual financial gain. Simply filing a *qui tam* complaint does not guarantee financial recovery, and the cooperating witness's *qui tam* has remained pending for several years. Not only was she motivated to be truthful for the sake of her *qui tam*, she was also still employed with Indivior at the time she initially became a whistleblower.[2] Thus, she risked losing her job, losing her credibility in the field she worked in, harassment from co-workers and possibly others, and many other personal negative impacts by coming forward. Finally, if she lied to federal agents, she risked criminal exposure herself. But even more simply, the fact she filed the *qui tam* confirms, rather than undermines, that she believed what she was telling the government, and that a crime was being committed.

Moreover, the magistrate judge's finding of probable cause to issue the search warrant was not based solely on the cooperating witness' statements, but was based on extensive information and investigation which occurred prior to the cooperating witness' filing of a *qui tam*, including the substantial company documents provided and the recordings of company meetings. Much of

---

[2] The cooperating witness left Indivior's employment in September 2013. (SW Affidavit at ¶ 14.)

what she told investigators was corroborated by the documents and recordings she provided. For instance, Exhibits 8 and 9 attached to the SW Affidavit provide ample support to show that a crime was being committed and that the normal inference was that further evidence of the crime could be found at Indivior's offices.[3] Exhibit 8 includes a list of doctors in a practice in Pittsburgh, Pennsylvania, and on whom Indivior clinical liaisons called, who were prescribing unnecessarily high doses – page 2 shows, "Group (9) 5945 units" *for one month, February 2011*. The witness confirmed that this document was housed internally at Indivior's offices. Exhibit 9 provides independent evidence of high dosing in an email between a clinic and defendants. This email showed that electronic documents supporting the crimes listed in the SW Affidavit would likely be found on defendants' server. The totality of information contained in the SW Affidavit would lead a reasonable person to determine that there was probable cause that information of a crime could be found at defendants' offices.

The defendants have offered no evidence or support to show that the omission would have affected a probable cause finding based on the totality of the circumstances or the fact that the cooperating witness eventually became a *qui tam* relator reduced her credibility as a witness. Even adding in the *qui tam* filing, the affidavit supports a finding of probable cause and a practical, common sense decision that, given all of the circumstances, evidence of a crime could be found at the places to be searched. *See Gates*, 462 U.S. at 213.

---

[3] These are just examples. The SW Affidavit includes numerous company documents, in addition to the referenced surreptitious recordings. Defendants have not asserted that these documents are false or that the recordings were fake.

## **CONCLUSION**

The Court should find that the fact that the cooperating witness filed a *qui tam* complaint, with attendant potential benefits and also consequences and responsibilities, after supplying information to the government, was immaterial and that, even if included, the affidavit still would have supported probable cause for the search warrant. Accordingly, the Defendants' Motion to Suppress Illegally Seized Evidence and All Fruits Thereof should be denied.

    Respectfully submitted,

    DANIEL P. BUBAR
    First Assistant United States Attorney
    Attorney for the United States, Acting Under
    Authority Conferred by 28 U.S.C. § 515

    /s/ Kristin L. Gray, VSB No. 42266
    /s/ Joseph S. Hall, VSB No. 48350
    Albert P. Mayer
    Randy Ramseyer
    Carol L. Wallack
    Garth W. Huston
    Janine M. Myatt
    United States Attorney's Office
    180 West Main Street
    Abingdon, VA 24210
    Tel:   (276) 628-4161
    Fax:  (276) 628-7399
    Email: USAVAW.ECFAbingdon@usdoj.gov

    DAVID MORRELL
    Deputy Assistant Attorney General

    Matthew J. Lash
    Charles J. Biro
    United States Department of Justice
    Civil Division, Consumer Protection Branch
    950 Pennsylvania Avenue, N.W.
    Washington, DC  20530
    Tel:   (202) 307-0089
    Email: charles.biro@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on February 11, 2020, I electronically filed the foregoing Response with the Clerk of Court via the CM/ECF system, which will send notification of the filing to all counsel of record in this matter.

/s/ Albert P. Mayer, VSB No. 86024